# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                                                           Case No. 06-30083
                                                                                                Chapter 11
ROBINSON FOUNDRY, INC.,

       Debtor.

## MEMORANDUM DECISION

This Chapter 11 case is before the Court upon the motion of Ferrosource International, Inc. to allow its late filed claim. (Doc. 68). Ferrosource seeks to file an untimely proof of claim pursuant to Rules 3003(c)(3) and 9006(b)(1) of the Federal Rules of Bankruptcy Procedure. This motion was called for hearing on August 1, 2006, and this matter was taken under advisement. After consideration of the arguments of both parties and memorandum submitted by Ferrosource, the Court finds that Ferrosource's motion should be DENIED. Because Creditor has made no showing of excusable neglect, it will not be allowed to file its proof of claim.

### I. Background

Ferrosource International, Inc. (hereinafter "Creditor") is a distributor of pig iron. Between November 21, 2005, and January 11, 2006, it made six shipments to Robinson Foundry, Inc. (hereinafter "Debtor"). Creditor supplied Debtor with six invoices for the shipments, totaling $52,559.00, but it did not receive payment for any of the shipments. Two addresses were printed on Creditor's invoices: One address was a post office box in Tequesta, Florida; the other address was a post office box in Atlanta, Georgia. The Florida address was printed in bold letters at the top of the invoice, while the Atlanta

address was written at the bottom along with the words "remit to." The invoices did not designate which address was used for business mail purposes.

The Atlanta address is a lockbox held by the Royal Bank of Canada for the sole purpose of receiving invoice payments. The Bank receives all payments on behalf of Creditor and posts the payments online. No other mailings are posted electronically; instead, the Bank scans all other correspondence onto a computer disk, which it mails to Creditor's president and manager. Creditor claims that the computer disks are not routinely viewed, because Creditor does not regularly receive correspondence, other than so-called "junk mail," at that address.

On January 28, 2006, Debtor filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code. (Doc. 1). In its petition, Debtor listed 159 creditors under its Schedule F - Creditors Holding Unsecured Non-priority Claims.[1] Creditor was listed

---

[1] Debtor listed all 159 unsecured creditors as having claims that were contingent, disputed, and unliquidated. Under 11 U.S.C. § 1111(a), a proof of claim "is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated." (Emphasis added). Under this rule, only creditors whose claims fall into one of the above classifications are required to file a proof of claim. It appears that Debtor may be trying to defeat the proper application of this rule. By forcing all creditors holding unsecured claims to file a proof of claim, Debtor may be able to escape many of its liabilities. Many creditors may decide not to file a proof of claim and, therefore, forfeit their right to any payments under the plan.

Here, Debtor listed all its unsecured claims as disputed, contingent, and unliquidated. "It is quite unlikely that every claim could in good faith be contested and disputed." In re Gire, 107 B.R. 739, 744 (Bankr. E.D. Cal. 1989). There is some concern that this broad classification of all unsecured creditors' claims as contingent, disputed, and unliquidated may not have been done in good faith. "Considering the blanket characterization of all unsecured claims as disputed, there is a genuine question as to whether there was a good faith dispute at all." In re Rite Autotronics Corp., 27 B.R. 599, 603 (B.A.P. 9th Cir. 1982).

Creditor does not allege that Debtor acted in bad faith by listing its claim as disputed, contingent, and unliquidated. Therefore, this Court will not find that Debtor acted in bad faith. However, debtors should use the utmost care and precision when

2

among the unsecured creditors as having a contingent, unliquidated, and disputed claim for $26,029.25. The address listed for Creditor was its payment lockbox in Atlanta. On January 30, the clerk sent the bankruptcy notice to all creditors, setting a May 8 deadline to file proofs of claims. (Doc. 10). The certificate of service stated that the notice had been sent to Creditor's Atlanta lockbox address. (Doc. 19). The notice was received by the Bank and scanned onto the February 2006 computer disk, which was sent to Creditor. However, Creditor contends that no one viewed the disk until June, after the bar date had passed.

Debtor's purchasing department informed Creditor's president of Debtor's bankruptcy filing on January 31. Creditor also received a letter from an attorney for the unsecured creditors' committee on February 10. However, it was not until May 31, over three months later, that Creditor's president contacted an attorney and learned of the May 8 bar date. Creditor submitted its proof of claim form on June 2, and the clerk entered it on June 5. On July 6, Creditor filed this motion to allow its late filed proof of claim. (Doc. 68).

## II. Conclusions of Law

Rule 3003(c) of the Federal Rules of Bankruptcy Procedure sets out the requirements for filing proofs of claim in Chapter 11 cases. Rule 3003(c)(2) provides that when a creditor's claim is listed on the debtor's schedules as contingent, disputed, or unliquidated, or is omitted from the schedule, the creditor is required to file a proof of

---

completing their schedules. "[M]isrepresentations in schedules go to the heart of the good faith requirement." In re Nelson, 2006 WL 2091899, at *2 (Bankr. N.D. Cal. July 26, 2006).

claim with the bankruptcy court within the time prescribed by that court.[2] FED. R.
BANKR. P. 3003(c)(2). Rule 3003(c)(2) must be read in conjunction with Rule
9006(b)(1), which empowers a bankruptcy court to permit a late filed claim if the failure
to comply with the deadline was the result of "excusable neglect." The rule states as
follows:

> (b)(1) Except as provided in paragraphs (2) and (3) of this subdivision,
> when an act is required or allowed to be done at or within a specified
> period by these rules or by a notice given hereunder or by order of court,
> the court for cause shown may at any time in its discretion (1) with or
> without motion or notice order the period enlarged if the request therefore
> is made before the expiration of the period originally prescribed or as
> extended by a previous order or (2) on motion made after the expiration of
> the specified period permit the act to be done where the failure to act was
> the result of excusable neglect. (emphasis added).

FED. R. BANKR. P. 9006(b)(1).

The Supreme Court set the standard for determining whether a creditor's failure to file a timely proof of claim was the result of "excusable neglect" in Chapter 11 reorganization cases. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993). In evaluating whether neglect is excusable, a court must take into account all relevant circumstances surrounding the party's error. The Court listed four relevant circumstances for consideration: (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4)

---

[2] Rule 3003(c)(2) provides:
> (c)(2) Any creditor or equity security holder whose claim or interest is not
> scheduled or scheduled as disputed, contingent, or unliquidated shall file a
> proof of claim or interest within the time prescribed by subdivision (c)(3)
> of this rule; any creditor who fails to do so shall not be treated as a creditor
> with respect to such claim for the purposes of voting and distribution.

FED. R. BANKR. P. 3003(c)(2).

whether the movant acted in good faith. Id. at 395. No single factor is controlling; a court must weigh all relevant factors that "conspire to push the analysis one way or the other." In re 50-Off Stores, Inc., 220 B.R. 897, 901 (Bankr. W.D. Tex. 1998).

The facts of this case are easily distinguishable from Pioneer. In Pioneer, the Supreme Court considered significant the fact that the notice containing the bar date was "outside the ordinary course in bankruptcy cases. . . . [O]rdinarily the bar date in a bankruptcy case should be prominently announced and accompanied by an explanation of its significance." Pioneer, 507 U.S. at 398-99. In the absence of any other factors, the Court found that the deficiency in the notice was controlling in that case. See id. at 399. In this case, Creditor was provided with adequate notice of the claims bar date. In the Middle District of Alabama, a proof of claim deadline is routinely set in all Chapter 11 cases. A "Notice of Commencement of Case" is then sent to all creditors at the address provided by the debtor. See In re Barnes, 326 B.R. 832, 835 n.3 (Bankr. M.D. Ala. 2005). The notice in this case was sent to Creditor and stated that "Proof of claim must be *received* by the bankruptcy clerk's office by the following deadline: For all creditors (except a governmental unit): 5/8/06." (Doc. 10). The notice even included instructions for filing a proof of claim form.

Creditor argues that it did not receive actual notice of the bar date, because the notice was sent to what Creditor characterizes as an "incorrect address." Creditor bolsters this argument by claiming that the lockbox was used for payment purposes only, not for "business" mail, and that it did not have physical access to the lockbox. It further argues that Debtor could have obtained its "business" address with minimal effort. Creditor points out that the "remit to" address was on the bottom of the invoice and

5

Case 06-30083    Doc 76    Filed 08/17/06    Entered 08/17/06 14:58:23    Desc Main
Document    Page 5 of 7

significantly less prominent than the mailing address listed on the same invoice.  Creditor argues that the context in which the "remit to" address was used on its invoice should lead a reasonable business person to realize that such an address was only used for payment purposes and not business correspondence.  However, there was nothing on the invoice that specified which address was used for business mail or where such business communication should be sent.

Notice by mail carries a presumption of adequacy if the notice is sent to the creditor's address.  See In re Eagle Bus Mfg., 62 F.3d 730, 735 (5th Cir. 1995).  See also FED. R. BANKR. P. 9006(e) ("[S]ervice of . . . notice by mail is complete on mailing").  This Court finds Creditor's argument that notice was sent an incorrect address unpersuasive, because the lockbox address was printed on Creditor's invoices with no explanation of its significance.  Furthermore, Creditor had actual possession of the computer disk that contained the bar date.  The fact that Creditor's manager and president chose not to review the disk is irrelevant.  Because Creditor had a copy of the claims bar date notice in its possession, it cannot now claim that it did not receive notice simply because the notice remained unread.

The Pioneer decision cannot be "interpreted as allowing late-filing claimants without valid excuses to disregard the bar date.  Such a result would contravene the policy underlying the existence of bar dates, which allow debtors to fix their liabilities with certainty for plan purposes."  In re Eagle-Picher Indus., Inc., 158 B.R. 713, 716 (Bankr. S.D. Ohio 1993).  This Court will review the factors set forth in Pioneer as non-exclusive considerations, and the importance given to each factor will depend on the circumstances of the particular case.  In this case, allowing Creditor's late filed claim will

6
Case 06-30083   Doc 76   Filed 08/17/06   Entered 08/17/06 14:58:23   Desc Main
Document      Page 6 of 7

neither prejudice Debtor nor substantially impact the judicial proceedings, since Debtor's plan has not been confirmed and its disclosure statement has not yet been accepted. Furthermore, there is no evidence that leads this Court to believe that Creditor did not act in good faith. Although these considerations weigh in favor of allowing Creditor's claim, other circumstances override that conclusion.

This Court finds that Creditor's actual knowledge of the bankruptcy proceeding is particularly significant. The fact that Creditor knew about the bankruptcy filing and did nothing for almost four months is dispositive.[3] "[M]ere knowledge of a pending bankruptcy proceeding is sufficient to bar the claim of a creditor who took no action." In re Alton, 837 F.2d 457, 460 (11th Cir. 1988). Creditor was also contacted twelve days after the bankruptcy filing by an attorney on behalf of the unsecured creditors' committee. However, Creditor did not reply to the letter or try to contact anyone concerning the bankruptcy for almost four months. This neglect and inattentiveness does not fall within the narrow definition of "excusable neglect" under Rule 9006(b)(1), as defined by the Supreme Court in Pioneer.

### III.     Conclusion

Because Creditor has failed to show excusable neglect, Creditor's motion for allowance of a later filed proof of claim is DENIED.

Done this the 16th day of August, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

---

[3] In his affidavit, Creditor's manager, Stephen Miller, admits that he had knowledge of the bankruptcy proceedings three days after Debtor filed the bankruptcy petition. (Doc. 68, Ex. 2).

7
Case 06-30083   Doc 76   Filed 08/17/06   Entered 08/17/06 14:58:23   Desc Main
Document      Page 7 of 7